IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NYAH SEKEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-706 (RDA/WEF) |
| | ) |
| CH MF BTH II/ALEXANDRIA OLD TOWN, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants CH MF BTH II/Alexandria Old Town, LLC, Alexan Florence, and Bozzuto Management Company's Motion to Dismiss for Failure to State a Claim. Dkt. 7. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering Defendants' Motion to Dismiss together with their Memorandum in Support (Dkt. 7-1), Plaintiff's *pro se* Complaint (Dkt. 1), and Plaintiff's attachment to the Complaint (Dkt. 1-1), the Court GRANTS-IN-PART and DENIES-IN-PART the Motion to Dismiss (Dkt. 7) for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background[1]

The instant lawsuit arises out of Plaintiff Nyah Sekel's former tenancy at the Alexan Florence apartment complex ("AF Apartments"). Defendant Alexan Florence ("Defendant AF

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Apartments") is an apartment complex in Alexandria, Virginia. Dkt. Nos. 1 ¶ I.B.; 1-1 ¶ 6. Defendant CH MF BTH II/Alexandria Old Town, LLC ("Defendant CH") owns AF Apartments. Dkt. Nos. 1 ¶ I.B.; 1-1 ¶ 7. Defendant Bozzuto Management Company ("Defendant Bozzuto Management") manages AF Apartments. Dkt. Nos. 1 ¶ I.B.; 1-1 ¶ 7.

In August 2022, Plaintiff moved into a unit at AF Apartments. Dkt. 1-1 ¶ 8. Plaintiff asserts that once she moved in, she was stalked by a random individual. *Id.* at 4. She claims that the individual followed her and waited in his car looking at her and flashing his lights at her. *Id.* Plaintiff alleges that this individual is contracted to work on the property by Defendants.[2] *Id.*

Plaintiff reported the stalking to Defendants in August 2022. *Id.* Plaintiff alleges that, after she reported the stalking, Defendants used the fire alarm speaker in her apartment as an intercom to whistle into her unit. *Id.* As a result, Plaintiff removed the fire alarm speaker, and Defendants subsequently issued her a lease violation. *Id.* Plaintiff also added a deadbolt to her door because she believed Defendants were entering her unit unlawfully to harass her. *Id.* Plaintiff alleges that she woke up to applications removed from her phone, another hard drive added to her laptop, missing food, and random trash left behind. *Id.*

On September 29, 2022, Plaintiff received a letter stating that, if Plaintiff did not remedy her lease infractions within twenty-one days, the landlord may terminate the lease on October 31, 2022. Dkt. 7-2 at 1. In a letter dated October 14, 2022, Plaintiff informed Defendants' attorney of her reasons for noncompliance with her lease and stated that the lease infractions had been remedied. *Id.* On October 25, 2022, Defendants issued Plaintiff a lease termination notice despite Plaintiff putting the fire alarm speaker back on the wall and removing the dead bolt from her door.

---

[2] In setting forth her allegations, Plaintiff does not differentiate between the different Defendants. *See generally* Dkt. 1-1. Accordingly, the Court, in summarizing the facts, also refers to Defendants collectively.

Dkt. 1-1 ¶ 8.  The notice provided: "We appreciate your efforts to respond to our concerns, however, our concerns over lease compliance and the health and safety of the community remain.  At this point, we believe that it is in the best interest of all parties to terminate the lease . . . ."  Dkt. 7-2 at 1.  Plaintiff alleges that Defendants terminated her lease as a pretext to not rent to her because she reported the stalking.  Dkt. 1-1 ¶ 8.  Plaintiff subsequently brought suit in this Court against Defendants AF Apartments, CH, and Bozzuto Management for violations of the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601 *et seq.*  Dkt. Nos. 1 ¶ I.B.; 1-1 at 4.

### B.  Procedural Background

The instant action is the second lawsuit that Plaintiff has filed related to the aforementioned events.  *See Sekel v. Alexan Florence Apartments*, GV22005830-00 (Va. Dist. Ct. Apr. 13, 2023).  Plaintiff originally brought a complaint against Defendant AF Apartments on December 9, 2022 in the Alexandria General District Court.  Dkt. 7-3.  After a hearing on April 13, 2023, the Alexandria General District Court dismissed the lawsuit.  *Id.*

Subsequently, on May 31, 2023, Plaintiff filed a Complaint against Defendants in this Court.  Dkt. 1.  On June 26, 2023, Defendants filed a Motion to Dismiss for Failure to State a Claim, Dkt. 7, along with a Memorandum in Support, Dkt. 7-1.  To date, Plaintiff has not responded to Defendants' Motion.

## II.  STANDARD OF REVIEW

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Goldfarb v. Mayor & City*

*Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) ("[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "A plaintiff has failed to state a claim where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Whittman v. Associa, Associations, Inc.*, No. 121CV00077RDATCB, 2022 WL 195498, at *4 (E.D. Va. Jan. 21, 2022) (citing *Iqbal*, 556 U.S. at 679), *aff'd*, No. 22-1186, 2022 WL 2914022 (4th Cir. July 25, 2022). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, but "[u]nder narrow circumstances, a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *See Goldfarb*, 791 F.3d at 508.

III.  ANALYSIS

Defendants seek dismissal of all claims brought against them pursuant to the doctrine of claim preclusion. In the alternative, Defendants urge the Court to dismiss the Complaint for failure to state a claim. The Court addresses each argument in turn.

A.  Claim Preclusion

Although claim preclusion is an affirmative defense, a defendant may raise it on a Rule 12(b)(6) motion in certain circumstances. *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967). Rooted in *res judicata* principles, the doctrine of claim preclusion "bars further claims by parties or their privies based on the same cause of action" when there has been a "final judgment on the merits" in an earlier suit. *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). This Court looks to three elements when deciding whether claim preclusion applies, asking whether there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (quoting *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003)). Ultimately, claim preclusion promotes "[j]udicial efficiency and finality" of decisions. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004).

A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Pueschel v. United States*, 369 F.3d 345, 355-56 (4th Cir. 2004) (citing *Federated Dep't Stores, Inc.*, 452 U.S. at 398). The Third Circuit has held that when it is uncertain as to what kind of dismissal a court entered, ambiguities in dismissal orders should be construed against claim preclusion. *Papera v.*

5

*Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 609 (3d Cir. 2020). The Fourth Circuit similarly observed in an issue preclusion case that "[w]hen . . . a prior court's explanation for its grounds for dismissing a prior action is amenable to multiple interpretations, courts decline to hold that the prior court disposition has preclusive effect in subsequent litigation." *Hately v. Watts*, 917 F.3d 770, 779 (4th Cir. 2019).

The record here fails to establish whether Plaintiff's first lawsuit against Defendant AF Apartments was dismissed on the merits. The record only shows that the initial suit was dismissed following a hearing in Alexandria General District Court—it is unclear whether the state court ever reached the merits of the case. Dkt. 7-3. Accordingly, this Court construes the dismissal in Alexandria General District Court against claim preclusion and finds that Plaintiff's claims are not barred by the doctrine.

B.  Failure to State a Claim

Defendants alternatively argue that the instant case should be dismissed due to Plaintiff's failure to state any claim against Defendants. The Court will evaluate each of Plaintiff's FHA claims in turn.

1.  Section 3604(a) claim

To allege a violation of 42 U.S.C. § 3604(a), Plaintiff must assert that (1) Defendants "denied or made housing unavailable" to Plaintiff and (2) Defendants' actions were based on a protected characteristic. *Edwards v. Johnston Cnty. Health Dep't*, 885 F.2d 1215, 1221 (4th Cir. 1989). Although § 3604(a) claims typically involve discrimination that occurs pre-sale or pre-rental, courts have evaluated evictions and constructive evictions under § 3604(a). *Harris v. Vanderburg*, 584 F. Supp. 3d 82, 96 (E.D.N.C. 2022); *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983 (4th Cir. 1984).

In the instant case, Plaintiff was evicted, and therefore, housing was made unavailable to her. Dkt. 1-1 at 4. However, Plaintiff has not pleaded sufficient facts to show that she was evicted due to her sex. *See Gutierrez v. E. Beach-Bay Marine Marina, Inc.*, No. 2:14CV476, 2015 WL 13064927, at *3 (E.D. Va. Sept. 23, 2015), *aff'd*, 639 F. App'x 179 (4th Cir. 2016) (denying a § 3604(a) claim because Plaintiff failed to do more than make conclusory allegations that she was denied housing because of her race).[3] Plaintiff's bare assertion that Defendants violated § 3604(a) is insufficient to meet the Rule 8 pleading standard. Dkt. 1-1 ¶ 8. Consequently, Plaintiff fails to state a claim under § 3604(a).

2. Section 3604(b) claim

Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Federal courts permit plaintiffs to bring hostile housing environment claims under § 3604(b). *See, e.g.*, *Harris*, 584 F. Supp. 3d at 98 (citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861-62 (7th Cir. 2018)). "To demonstrate a hostile housing environment claim, a plaintiff must show: '(1) she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant.'" *Id.* (citing *Wetzel*, 901 F.3d at 861-62; *cf. Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)).

---

[3] In fact, Plaintiff simply alleges that "she reported the stalking to [Defendants] and her lease was terminated *because she reported the stalking*." Dkt. 1-1 ¶ 8 (emphasis added).

Here, Plaintiff's Section 3604(b) claim fails because she has not alleged a basis for imputing liability to Defendants under the third prong. To impute liability to Defendants, Plaintiff must establish that Defendants are either vicariously or directly liable for the alleged harassment. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Harris*, 584 F. Supp. 3d at 92. Ordinary rules of vicarious liability apply to FHA claims. *Meyer*, 537 U.S. at 290-91. These traditional principles render "principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Id.* at 285.

With respect to direct liability, "it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer . . . . [W]hat *does* matter is how the [defendant] handles the problem." *Wetzel*, 901 F.3d at 865. Importantly, "[d]irect liability for inaction" attaches "only if defendants had, but failed to deploy, available remedial tools." *Id.* For instance, in applying direct liability to FHA claims, the courts in *Wetzel* and *Harris* reasoned that because the harasser was a tenant and the defendants had sufficient control over that tenant, the defendants could be held liable for their failure to take action to correct the discriminatory conduct. *Wetzel*, 901 F.3d at 865; *Harris*, 584 F. Supp. 3d at 93-94.

In the case at bar, Plaintiff's conclusory allegation that her stalker was contracted to work at AF Apartments by Defendants is insufficient to impose vicarious liability onto them given her concession that she does not know the identity of her stalker. Dkt. 1-1 ¶ 8; *see also Taylor v. Ahold*, No. 3:16CV241, 2017 WL 377935, at *2 (E.D. Va. Jan. 23, 2017), *aff'd sub nom. Taylor v. Royal Ahold NV*, 694 F. App'x 931 (4th Cir. 2017) (finding that the Complaint ha[d] not been plausibly connected [to] any actual person or employee associated with the [d]efendant" because the plaintiff could not "identify who" made any of the alleged statements). Likewise, because Plaintiff failed to make more than conclusory allegations that the alleged stalker worked for

Defendants, this Court cannot determine whether Defendants could have used any incentives or sanctions to correct the harassing conduct. Therefore, direct liability is also inapplicable.[4] Since there is no basis for imputing liability to Defendants, Plaintiff fails to state a claim under § 3604(b).

### 3.  Section 3617 claim

A claim for retaliation under 42 U.S.C. § 3617 requires that Plaintiff allege that "(1) she was engaged in protected activity; (2) [Defendants were] aware of that activity; (3) [Defendants] took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citations omitted). "Because Title VII and the FHA employ similar language and are part of a coordinated scheme of federal civil rights laws enacted to end discrimination, . . . much of our FHA jurisprudence is drawn from cases interpreting Title VII." *Id.* (internal quotation and citations omitted).

The first three prongs of § 3617 are readily met here because Plaintiff engaged in a protected activity when she reported the alleged stalking to Defendants,[5] Defendants were aware of the protected activity, and Defendants evicted Plaintiff. The fourth prong requires further analysis.

An important factor in the causation determination is the temporal proximity between Plaintiff's protected activity and Defendants' adverse actions. *Harris*, 584 F. Supp. 3d at 100;

---

[4] Plaintiff additionally attempts to invoke direct liability by alleging that "[Defendants] were utilizing the fire alarm speaker as an intercom to whistle into her unit . . . ." Dkt. 1-1 ¶ 8. Again, however, this allegation is insufficient because Plaintiff does not specify who in particular was harassing her and what his or her relation to any of the three Defendant companies is.

[5] Under the FHA, "[p]rotected activity includes any action taken to protest or oppose statutorily prohibited discrimination or the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing." *Fedynich v. Lozano*, No. 3:20CV260, 2021 WL 710368, at *13 (E.D. Va. Feb. 23, 2021) (quotation omitted).

*Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653-54 (4th Cir. 2021) (stating that temporal proximity alone is sufficient to establish a causal relationship between a protected activity and an adverse action for a Title VII retaliation claim). The Fourth Circuit has ruled that "two-and-a-half months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events in the absence of other evidence of retaliation," but complaints of discrimination one month before an adverse action is sufficient to create a jury question for the causation prong of a *prima facie* case. *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020) (quotation and citations omitted).

In the case at bar, Defendants notified Plaintiff of her potential lease termination approximately one month after she engaged in the protected activity of reporting the stalking to Defendants. Accordingly, the temporal proximity between Plaintiff's protected activity and Defendants' adverse action makes Plaintiff's claim of retaliation plausible. Accordingly, Plaintiff's § 3617 claim may proceed past the motion to dismiss stage.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 7) is GRANTED-IN-PART and DENIED-IN-PART; Plaintiff's § 3604(a-b) claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim. If Plaintiff so chooses, she may file an Amended Complaint within thirty (30) days of this Order.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff, who is proceeding *pro se*, and to counsel of record for Defendants.

It is SO ORDERED.

Alexandria, Virginia
January 31, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge